# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE L. VELIZ, | : | CIVIL NO. 3:14-CV-0967 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN J. KRUEGER, | : | |
| Respondent | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Jose Veliz ("petitioner" or "Veliz"), an inmate currently incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), Minersville, Pennsylvania. He contends that his due process rights were violated during the course of disciplinary proceedings. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.     Background

On July 3, 2013, while incarcerated at FCI-Schuylkill, petitioner was made aware, *via* delivery of Incident Report 246369, that he was being charged with Prohibited Act Code 115, Destroying and/or Disposing of any Item During a Search. (Doc. 13-1, p. 16). The report incident described the incident as follows:

> While clearing Unit 2A of inmates in preparation for a shakedown, I opened the door of cell B02-232 and saw inmate Veliz, Jose #38186-177 with his back towards me, dumping an unknown substance into the toilet. Veliz immediately flushed the toilet and a strong odor of alcohol emanated from the room. I ordered Veliz out of the cell and he complied. When I entered the cell the sink was running and there was residue of the intoxicants around the sink fixtures. Thre was also residue of the intoxicants on the wall and floor behind the toilet and on

the seat near the fixture. There was a strong odor of alcohol through the entire cell
and was concentrated near the toilet area.

(Id.)

During the July 8, 2013 Unit Discipline Committee ("UDC") review, he stated "That's oatmeal, not intoxicants." (Id.). The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") because "Greater sanctions are warranted than imposable [sic] by the UDC" and recommended disciplinary segregation, loss of good conduct time, and loss of privileges. (Id.) After being advised of the rights associated with the process, petitioner indicated he understood his rights by affixing his signature to the Inmate Rights at Discipline Hearing form. (Id. at 18). He chose not to have a staff member present and declined the offer to call witnesses. (Id. at 19).

The hearing commenced on July 22, 2013. (Id. at 21). He waived his right to staff representation, did not request witnesses and denied the charges against him. (Id.) The DHO summarized his statement as follows: Veliz stated "I was washing out my bowls; it was oatmeal." Veliz stated "The smell of intoxicants was coming from the vents." Veliz declined to make any further statement." (Id.) Documentary evidence relied upon included the incident report and investigation, and a photograph taken by the reporting officer. (Id.)

The DHO found based on the evidence that petitioner committed the Prohibited Act of Code 199, Conduct Which Disrupts – most like – Destroying and/or Dispensing of any item during a Search. (Id. at 22). In arriving at this conclusion, he relied on the information contained in the incident report and stated the following:

The DHO believed the information provided by the staff member involved in this

2

>case, as they derive no known benefit by providing false information. The DHO finds the charge to be best supported as Code 199 Most Like Code 115. This charge is supported in this case based upon the greater weight of the evidence cited in this report as well as based on the inmate's actions when staff entered the cell to conduct a cell search. The lieutenant's experience of knowing the smell and detection of homemade intoxicants validates the substance the inmate intentionally flushed down the toilet was homemade intoxicants. The residue left behind support the inmate's attempt to destroy evidence prior to the staff member entering the cell. The DHO finds the charge for code 199 Most Like 115 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.
>
>Upon questioning by the DHO, Inmate Veliz, Registration #38186-177 denied the charge. He elaborated upon his plea by stating, he was washing out his bowls and it was oatmeal he flushed down the toilet. After the consideration of evidence documented above, the DHO has drawn the conclusion that the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate Veliz, Register No. 38186-77 committed the prohibited act(s) fo Conduct Which Disrupts – Most Like – Destroying and/or Disposing of any item during a Search, Code(s) 199 ML 115 on 07-02-2013, at or about 2:40 PM in Unit 2A cell B02-232 at FCI Schuylkill, PA.

(<u>Id.</u> at 22).

In sanctioning him with a disallowance of 21 days of good conduct time, 30 days disciplinary segregation, and a monetary fine, the DHO reasoned as follows: "Inmate Veliz's destroying/disposing of any item prior to a search threatened the orderly running of the institution. His intentional destroying of evidence prior to search indicates a lack of respect for the searching official as well as threatens the safety of both staff and inmates. Accordingly, Disciplinary Segregation and the Disallowance of Good Conduct Time is sanctioned to Punish Veliz for his misconduct while a Monetary Fine is sanctioned in an effort to deter him from future misconduct." (<u>Id.</u>)

After exhausting all available administrative processes, petitioner filed the instant

petition arguing that his due process rights were violated because the DHO did not allow him to present documentary evidence, did not allow him to call witnesses, denied him a staff representative, denied him the opportunity to be heard. (Doc. 1, pp 6-11). He also contends that he was denied the right to appeal the DHO's decision. (Id. at 11).

**II.     Discussion**

Petitioner's claim that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of petitioner's confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Federal Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is referred to the UDC for a hearing pursuant

to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  (Id.)  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  (Id.)  The matter was referred to a DHO because "greater sanctions are warranted than imposable [sic] by the UDC."

Greatest category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits.  28 C.F.R. § 541.3.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  See Wolff v. McDonnell, 418 U.S. 539, 564–66 (1974).

The record clearly demonstrates that Veliz's disciplinary hearing complied with the Wolff due process requirements.  He received written notice of the claimed violation at least twenty-four hours in advance.  He was informed of his rights at both the UDC and DHO hearings and, on each occasion, declined staff representation and indicated that he did not wish to present any witnesses or documentary evidence.  Wolff also requires that inmates receive written decisions explaining the DHO's conclusions.  Id. at 564–65, 94 S.Ct. 2963.  Veliz acknowledged receipt of the report on July 29, 2013.  (Doc. 13-1, p. 22),  It is evident

that he was afforded an opportunity to be heard and that all of the Wolff standards were met.

To the extent that he alleges that he was denied the right to appeal the DHO decision, the record indicates otherwise. Veliz filed a Regional Administrative Remedy Appeal on August 1, 2013. (Doc. 13-1, p. 25). The appeal was wholly considered and denied on September 4, 2013. (Id. at 24).

## III.  Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:  February 4, 2016